## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DARLENE ANORUO,** | |
| *Plaintiff*, | |
| v. | Case No. 1:23-CV-01970-JRR |
| **MEDSTAR HEALTH, INC.,** | |
| *Defendant*. | |

### MEMORANDUM OPINION

Pending before the court is Defendants' Motion for Summary Judgment (ECF No. 29, the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

### I.    BACKGROUND

Plaintiff Darlene Anoruo, a Registered Nurse and former employee of Defendant Medstar Health, Inc. ("MedStar") and Defendant MedStar Franklin Square Medical Center ("MedStar Franklin"), brings claims of religious discrimination arising from Defendants' rejection of her requested religious exemption from, and termination of her employment for failure to comply with, MedStar's mandatory COVID-19 vaccination policy. Except where noted, the following facts are undisputed.

#### A.  Plaintiff's Employment History

On May 6, 2019, Plaintiff began working for MedStar as a Registered Nurse ("RN") in Orthopedics at MedStar Harbor Hospital. (ECF No. 29-2 at p. 21; ECF No. 29-3, Anoruo Dep. Tr. 30:15–22.) After eight months, Plaintiff transferred to MedStar Franklin, a facility operated by MedStar. (ECF No. 29-3, Anoruo Dep. Tr. 31:1–10.)

For the duration of her employment, MedStar maintained a mandatory influenza vaccine policy. (ECF No. 29-3, Anoruo Dep. Tr. 125:8–129:1.)  MedStar allowed employees to submit religious exemption requests to its Influenza vaccine mandate, and informed new hires of this option. (ECF No. 29-4, Gorecki Dep. Tr. 25:18-26:1, 27:1–28:1.)  A copy of Medstar's Influenza Vaccine Policy was available to employees through MedStar's intranet websites, MyHR and StarPort. *Id.* Tr. 87:10–21; 82:16–83:6; ECF No. 29-2 at p. 28.  Annually, during her employment at Medstar, Plaintiff received the influenza vaccine and never sought a religious accommodation to avoid Defendant's influenza vaccine mandate because, according to Plaintiff, she did not know the exemption option existed. (ECF No. 29-3, Anoruo Dep. Tr. 48:13–19, 71:6–10.)

### B.  Defendant's COVID-19 Vaccination Policy

On August 30, 2021, Kenneth Samet, MedStar's President and Chief Executive Officer, emailed all MedStar personnel that MedStar "associates, physicians, residents/fellows, students, Board members, medical staff members and other non-employed credentialed professionals, contractors, volunteers, agency employees, and vendors" were required to be fully vaccinated against COVID-19 by November 1, 2021. (ECF No. 29-2 at p. 24–25.)  Under the policy, fully vaccinated was defined as "receiving both doses of a two-dose COVID-19 vaccine (Pfizer or Moderna) or the single-dose COVID-19 vaccine (Johnson & Johnson)." *Id.*  In the August 30 email, Mr. Samet advised, "we will offer medical and religious exemptions." *Id.*

MedStar's official policy detailed the procedure for requesting a religious exemption from its COVID-19 vaccine mandate. (ECF No. 29-2 at p. 3.)  In pertinent part, the policy allowed vaccine mandate exemption for those with:

> [a] sincerely held religious belief, practice or observance that prevents the individual from receiving any fully approved or approved under EUA COVID-19 vaccine, including Pfizer, Modern, J&J/Jansen or any other vaccine FDA may authorize in the future.

2

*Id*. The policy further explained:

> If you are granted an exemption, you will not be required to receive the COVID-19 vaccine, however you will be required to comply with alternative safety measures to be determined by the Executive Vice President and Chief Medical Officer based on community prevalence, which will include requirements for distancing, masking, and interval testing, among others to reduce the risk of COVID-19 transmission to you, our patients, visitors, and fellow Associates.
>
> …
>
> <u>Religious Exemption Request Process</u>
> When requesting a religious exemption request, you must fully complete and submit the religious exemptions section of the *COVID-19 Vaccination Request Form* regarding your sincerely held religious belief, practice or observance and how it prevents you from receiving any COVID-19 vaccine.

*Id*.

For MedStar employees who failed to submit written proof of receiving the full COVID-19 vaccine or a completed COVID-19 Vaccination Exemption Form by the November 1 deadline, the policy specified:

> Associates (including, employed physicians and other credentialed individuals, employed residents and fellows) who fail to comply with this policy by the end of the designated COVID-19 Vaccination Period will be suspended without pay for at least one week, or the duration of time necessary to obtain Full Covid-19 Vaccination (number of days after final dose as defined by the FDA for vaccination status), after which they may comply and return to work. If an Associate (including, employed physicians and other credentialed individuals, employed residents and fellows) remains noncompliant at the end of the suspension period, the associate will be subject to discipline up to and including termination from employment. Residents who fail to comply with this policy may be subject to disciplinary action, up to and including dismissal, per GME policies as set forth in the MedStar Health House Staff Manual.
>
> Medical staff members and other credentialed professionals who fail to comply with this policy may have their privileges administratively suspended until they provide proof of compliance or until the end of the COVID-19 Vaccination requirement and may

> be subject to termination or nonrenewal of privileges for continued noncompliance. Non-compliance with this policy can result in the termination of a relationship with contracted staff, independent contractors, vendors, and volunteers. Students, volunteers, contractors, and vendors will not be allowed on MedStar Premises after the COVID-19 vaccination deadline if they have not received a full COVID-19 vaccination and any subsequently required boosters.

(ECF No. 29-2 at p. 6.)

MedStar's religious exemption request form required employees to

> (a) identify their sincerely held religious belief, practice, or observance;
> (b) explain how their sincerely held religious belief, practice, or observance applied in their daily life;
> (c) explain how their religious belief, practice, or observance prevented the associate from complying with the COVID-19 Policy;
> (e) state whether such religious belief, practice, or observance applied to all vaccines or just the COVID19 vaccine; and
> (f) explain, if applicable, why the request applied to one vaccine but not others

(ECF No. 29-2 at pp. 8–9.)  After an employee submitted an exemption request, her request proceeded to MedStar's vaccination review team for individualized assessment of the request. (ECF No. 29-5, Frey Dep. Tr. 29:3–30:3.)

### C.  Plaintiff's Request for Accommodation

On September 14, 2021, Plaintiff submitted two religious exemption requests, one for MedStar's COVID-19 Vaccine Mandate and one for its Influenza Vaccine Mandate.  (ECF No. 29-2 at pp. 8–9; ECF No. 1-1 at pp. 21–23.)  The exemption requests set forth identical responses as follows:

> *Please identify your sincerely held religious belief, practice, or observance.*
> My sincerely held religious belief, practice, or observance is found in the Holy Bible. Please, see the King James Version of First Corinthians the sixth chapter, and 19th and 20th verses (I Corinthians 6:19-20). It says, "What? Know ye not that your body

4

is the temple of the HOLY GHOST which is in you, which you have of GOD, and ye are not your own. For ye are bought with a price: therefore glorify GOD in your body, and in your spirit, which are GOD'S. Also see, I Corinthians 3:16-17; Know ye not that ye are the temple of GOD, and that the SPIRIT OF GOD dwelleth in you? If any man defile the temple of GOD, him shall GOD destroy; for the temple of GOD is holy, which temple ye are. Also see Romans 12:1; I beseech you therefore, brethren, by the mercies of GOD, that ye present your bodies a living sacrifice, holy, acceptable unto GOD, which is your reasonable service. As you can see, according to GOD'S word (and, I believe it), my body does not belong to me. It belongs to GOD. I am to do according to what he wants me to do in my body, and with my body. I am not to defile it.

*Please explain how your above sincerely held religious belief governs/limits the activities you engage in in your daily life.*
My above sincerely held religious belief does governs/limits the activities I engage in, in my daily life. My above sincerely held religious belief, is a life style. In I Corinthians 6:9-11 says, "Know ye not that the unrighteous shall not inherit the kingdom of GOD? Be not deceived: neither fornicators, nor idolaters, nor adulterers, nor effeminate, nor abusers of themselves with mankind, Nor thieves, nor covetous, nor drunkards, nor revilers, nor extortioners, shall inherit the kingdom of GOD. And such were some of you: but ye are washed, but ye are sanctified, but ye are justified, in the name of the LORD JESUS, and by the SPIRIT OF OUR GOD. Knowing the above text of scripture, and by the grace of my GOD ALMIGHTY, I am kept from the above sins. Only by GOD's grace and Holy Spirit, I do not fornicate. I keep away from drunkardness. If I make a mistake in anyway, I repent and confess before GOD through the LORD JESUS CHRIST.

*Please explain how your above sincerely held religious belief prevents your from fulfilling this requirement.*
Because my body is the temple of the HOLY GHOST, and I am not my own, I am not to rebel against GOD. I am to be careful not to put certain things into my body. I must stay away from certain foods, certain drinks, and vaccines.

*Do you currently have a religious exemption from MedStar Health's annual mandatory influenza/flu vaccination requirement?* No
…

*Does your religious belief identified above prevent you from receiving other vaccines or just the COVID-19 vaccine?*
All other vaccines

(ECF No. 29-2 at pp. 8–9; ECF No. 1-1 at pp. 21–23.)

Along with her COVID-19 Vaccine Mandate exemption request, Plaintiff submitted the following addendum:

> I am requesting that I not be tested for COVID twice per week, but be screened instead. However, if I develop symptoms, and then be tested. There is not an area for me to make this request on the exemption form, so I added this attachment, thank you.

(ECF No. 29-2 at p. 11.)  Plaintiff testified at deposition that this additional request was unrelated to her religious beliefs, but was a matter of preference.  (ECF No. 29-3, Anoruo Dep. Tr. 115:6–116:12; 146:18–147:4.)

On October 6, 2021, MedStar emailed Plaintiff to inform her that her COVID-19 Vaccine Mandate exemption request was denied because "you have not sufficiently established that your religious belief, practice or observance preventing you from receiving any COVID-19 vaccine is sincerely held given your acceptance of other vaccines."  (ECF No. 29-2 at p. 12.)  The correspondence also stated that the denial was final, and Plaintiff was required to become fully vaccinated by November 1 to maintain employment with MedStar.  *Id.*

By letter of November 5, 2021, MedStar notified Plaintiff that, effective November 7, she was suspended without pay for failure to comply with the mandatory COVID-19 Vaccination Policy; and that she would be terminated from her position if she did not provide proof of vaccination by November 14, 2021.  *Id.* at 29.  Finally, by letter of November 17, 2021, MedStar terminated Plaintiff from her position effective November 15, 2021.  *Id.* at 30.  The letter informed Plaintiff that she had the right to contest the decision by filing a dispute with MedStar Health Human Resources Policy 203, Grievance and Dispute Resolution within 14 days.  *Id.*  Plaintiff filed a Policy 203 grievance.  By letter of February 7, 2022, the Grievance Committee upheld her

termination "after careful review of all" relevant materials; the determination was "final" and did not set forth a reason for its decision.  (ECF No. 1-1 at p. 17.)

### D.  Procedural History

Plaintiff filed discrimination charges with the United States Equal Employment Commission and the Maryland Commission for Civil Rights and later received notices of her right to sue.  (ECF No. 1 ¶ 72; ECF No. 1-1.)  On July 22, 2023, Plaintiff timely filed the instant Complaint for failure to accommodate under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and wrongful termination under the Maryland Fair Employment Practices Act, MD. CODE ANN., STATE GOV'T § 20-606 ("MFEPA").  Defendants answered the Complaint on October 25, 2023, and following the close of discovery, moved for summary judgment on all counts on January 21, 2025.  (ECF Nos. 13, 29.)  Plaintiff opposes the Motion.  (ECF No. 34.)

## II.    <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.  Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding

to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court "must not weigh evidence or make credibility determinations."  *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).  Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## III.   ANALYSIS

### A.  Count I: Failure to Accommodate under Title VII

Plaintiff alleges Defendants wrongfully denied her reasonable accommodation in violation of Title VII by rejecting her requested religious exemption to MedStar's COVID-19 vaccine mandate.

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's religion."  42 U.S.C. § 2000e-2.  The definition of "religion" includes "all aspects of religious observance and practice, as well as belief, unless an

employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). "Because this definition includes a requirement that an employer 'accommodate' an employee's religious expression, an employee is not limited to the disparate treatment theory to establish a discrimination claim. An employee can also bring suit based on the theory that the employer discriminated against her by failing to *accommodate* her religious conduct." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1018 (4th Cir. 1996) (emphasis in original). Thus, courts generally recognize two theories for asserting religious discrimination claims: failure to accommodate and disparate treatment. *Id.* at 1017; *see U.S. Equal Emp. Opportunity Comm'n v. Greyhound Lines, Inc.*, 554 F. Supp. 3d 739, 751 (D. Md. 2021) (same).

An employer has a "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)). "To state a *prima facie* failure-to-accommodate claim, an employee must allege that: '(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement.'" *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 509 (D. Md. 2019) (quoting *U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017)). "If the employee establishes a *prima facie* case, the burden then shifts to the employer to show that it could not [reasonably] accommodate the plaintiff's religious needs without undue hardship." *Firestone Fibers & Textiles Co.*, 515 F.3d at 312 (quoting *Chalmers*, 101 F.3d at 1019).

9

Here, the parties concur that Plaintiff informed MedStar of her religious belief that allegedly conflicted with its COVID-19 vaccine requirement and that she was fired from her position at MedStar for failure to comply with the COVID-19 vaccine mandate.  Defendants move for summary judgment on the grounds that Plaintiff's stated religious belief is not bona fide.  To demonstrate her religious belief is bona fide, Plaintiff must "show her professed belief is (1) sincerely held and (2) religious in nature."  *Barnett v. Inova Health Care Servs.*, 125 F. 4th 465, 470 (4th Cir. 2025).

"The first prong, sincerity, 'seeks to determine an adherent's good faith in the expression of [her] religious belief' and 'provides a rational means of differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud.'"  *Barnett*, 125 F. 4th at 470 (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)).  As the Fourth Circuit recently warned, "the inquiry into sincerity is 'almost exclusively a credibility assessment' and 'can rarely be determined on summary judgment, let alone a motion to dismiss.'"  *Id.* (quoting *Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007)).  Courts in this circuit have found alleged religious beliefs to be sincere where "there is no evidence . . . that suggests that the beliefs have been concocted for litigation or are otherwise disingenuous."  *Ellison v. Inova Health Care Servs.*, 692 F. Supp. 3d 548, 557 (E.D. Va. 2023); *Shigley v. Tydings & Rosenberg LLP*, 723 F. Supp. 3d 440, 446 (D. Md. 2024) (same).

The second prong, as to whether an alleged belief is religious in nature, "limit[s] the factfinder's inquiry to a determination whether 'the beliefs professed . . . are, in the claimant's own scheme of things, religious[.]'"  *Barnett*, 125 F. 4th at 470 (quoting *Patrick*, 745 F.2d at 157–58).  In this determination, "the claim of the adherent 'that [her] belief is an essential part of a religious faith must be given great weight.'"  *Id.* at 471.  Employees are not, however, "entitled to a blanket

exemption entitling them to make 'unilateral decisions' about which job requirements to comply with, 'even where religion is expressly invoked in communicating the beliefs.'" *Shigley*, 723 F. Supp. 3d at 446 (quoting *Foshee v. AstraZeneca Pharms. LP*, No. CV SAG-23-00894, 2023 WL 6845425, at *4 (D. Md. Oct. 17, 2023)). "Ultimately, the question before the Court is whether the beliefs are based on a system that is recognizably a religious 'scheme of things,' rather than a secular morality or personal health, convenience, preference, or whim." *Id.* at 446–47 (quoting *Welsh v. United States*, 398 U.S. 333, 339 (1970)); *see also Dachman v. Shalala*, 9 F. App'x 186, 192 (4th Cir. 2001) (explaining "[w]hile an employer has a duty to accommodate an employee's religious beliefs, [it] does not have a duty to accommodate an employee's preferences.").

### 1. *Sincerity of Plaintiff's Professed Religious Belief*

Defendants first seek summary judgment on the grounds that Plaintiff's professed objection to vaccines is not based on a sincerely held religious belief. Defendants correctly acknowledge that summary judgment on the sincerity prong is rarely warranted. *See Kay v. Bemis*, 500 F.3d 1214, 1219–20 (10th Cir. 2007) (noting that the issue of sincerity "'can rarely be determined on summary judgment'" because assessment of a claimant's sincerity involves credibility evaluation).[1]

Nonetheless, Defendants aver Plaintiff's past receipt of the influenza vaccination demonstrates inconsistent adherence to her claimed religious opposition to vaccines, thus

---

[1] In *Kay,* the Tenth Circuit reviewed the district court's 28 U.S.C. § 1915(e)(2)(B)(ii) dismissal of a pro se prisoner's free exercise claim related to the prison's failure to provide the plaintiff tarot cards, which he contended were essential to his religious practice. In full, the court explained: "[T]he court's assessment of the sincerity of Kay's beliefs was premature at this stage of the claim. 'The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment, ... and therefore the issue of sincerity can rarely be determined on summary judgment,' let alone a motion to dismiss. [citation omitted.] We have said that summary dismissal on the sincerity prong is appropriate only in the 'very rare case[ ]' in which the plaintiff's beliefs are 'so bizarre, so clearly nonreligious in motivation that they are not entitled to First Amendment protection.'" 500 F.3d at 1219. Thus, although the Tenth Circuit's opinion was based on a Rule 12(b)(6) standard, its reflection on Rule 56 judgment is pertinent here.

indicating her religious opposition to the COVID-19 vaccine mandate is not sincere.  In support

of this proposition, Defendants cite *Together Employees v. Mass General Brigham Incorporated*,

573 F. Supp. 3d 412 (D. Mass. 2021).  There, on a motion for preliminary injunction, the United

States District Court for the District of Massachusetts explained: "[d]etermining whether a belief

is sincerely held is a fact-intensive inquiry, turning on the 'factfinder's assessment of the

employee's credibility.' Evidence that an employee acted inconsistently with his or her professed

belief is relevant in assessing whether a belief is sincerely held."  *Id*. at 539 (citing *E.E.O.C. v.

Union Independiente de la Autoridad de Aceuductos y Alcantarillados de P.R.*, 279 F.3d 49, 56–

57 (1st Cir. 2002)).  *Together Employees* offers no deviation from the Fourth Circuit's instruction

in *Barnett* that sincerity is often a question of credibility, inappropriate for determination at

summary judgment; nor does it suggest an additional or modified evaluation where, as here, a

plaintiff has not posed religious opposition to one vaccine policy and opposes another on religious

grounds.  *Barnett*, 125 F. 4th; *Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th

Cir. 2015).  That Plaintiff received the flu vaccine absent opposition, and later opposed the

COVID-19 mandate on grounds of religion, is simply a relevant consideration in assessing whether

her COVID-19 vaccine opposition is or is not based on a sincerely held religious belief.  *Together

Employees* and *Barnett* are in harmony on this point.

Importantly, Defendants fail to show an absence of evidence to support Plaintiff's claim

that she sincerely holds a religious opposition to vaccines.  Where "the nonmoving party bears the

ultimate burden of proof at trial, the moving party may discharge its initial burden at summary

judgment by 'showing—that is, pointing out to the … court—that there is absence of evidence to

support the nonmoving party's case.'"  *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165

(4th Cir. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).[2]  Applying *Barnett*, this court recently held that a plaintiff's testimony that he is a Catholic, believes his body is a "temple of the Holy Spirit," and does not want to "defile" his body by receiving a vaccine was sufficient to avoid a defense summary judgment.  *Davis v. Reliance Test & Tech., LLC*, No. CV DKC 22-1760, 2025 WL 266664, at *6 (D. Md. Jan. 22, 2025).

Here, in her vaccine exemption request, Plaintiff describes her religious belief as a "life style" that "governs/limits the activities [she] engage[s] in."  (ECF No. 29-2 at p. 8.)  She contends that her religious beliefs include that her body belongs to God and accordingly, she must not defile it through fornication, "drunkardness," "certain foods, certain drinks, and vaccines."  *Id*. at 9.  And, Plaintiff explains, her religious belief prevents her from receiving all vaccines.  *Id*.  When questioned about her past receipt of the influenza vaccination, Plaintiff insists she was not aware MedStar offered its employees the option to apply for religious exemption to its mandatory influenza vaccine policy.  *See, e.g.* ECF No. 29-2, Anoruo Dep. Tr. 65:13–67:7.  Further, when she submitted her COVID-19 religious exemption request, Plaintiff also submitted an identical form requesting religious exemption the influenza vaccine policy.  (ECF No. 1-1 at pp. 21–23.)

The court is satisfied that Plaintiff has deduced sufficient evidence to generate a triable issue (*i.e.*, a genuine dispute of material fact) as to her sincerely held religious belief that forms the alleged basis of her COVID-19 vaccine objection.

---

[2] In support of her opposition to the Motion, Plaintiff offers her affidavit (ECF No. 34-4).  Defendants request the court strike certain paragraphs of the affidavit on the basis that it is a sham affidavit.  Additionally, Defendants insist that Plaintiff failed to support her arguments in opposition to the Motion with citations to the record as required by Federal Rule of Civil Procedure 56.  Because the court finds that Defendants, as the moving parties, have not met their burden to show Plaintiff lacks evidence to support her claims, the court will not address the affidavit and citation issues raised in the reply memorandum.  Said differently, triable issues of fact exist in the undisputed record before the court such that summary judgment is inappropriate without consideration of Plaintiff's record citations (or lack thereof) and affidavit.

## 2. *The Religious Nature of Plaintiff's Belief*

Next, Defendants seek summary judgment on the grounds that Plaintiff's purported religious-based vaccine opposition amounts to a request for an impermissible blanket privilege. On numerous occasions, this court has rejected religious exemption requests that are "essentially [] statement[s] that [a plaintiff] listen to her conscience and act according to personal preference." *Finn v. Humane Soc'y of United States*, No. CV GLR-23-2107, 2024 WL 1765702, at *4 (D. Md. Apr. 24, 2024); *see also Shigley*, 723 F. Supp. 3d at 446, and *Foshee*, 2023 WL 6845425, at *4 (same). Such "blanket privilege" requests "could be used to evade any job requirement that [Plaintiff] disagreed with," are not "subject to any principled limitation in [] scope," and "undermine[] our system of ordered liberty." *Foshee*, 2023 WL 6845425, at *4.

Additionally, and relevant here, this court and others have rejected as non-religious claims that an employee's body is a temple and cannot be defiled by any foreign or impure substance. *See, e.g.*, *Chinnery v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, No. 1:23CV1110 (DJN), 2024 WL 3152348, at *5 n.6 (E.D. Va. June 24, 2024) (collecting cases). These body-as-a-temple claims, when unaccompanied by, or devoid of, any explanation as to why receipt of a vaccine defiles the temple fail to present a cognizable conflict with an employer's vaccine mandate. As the United States District Court for the Eastern District of Virginia recently opined, "[t]he food that [plaintiff] eats; the water that she drinks; the very air that she breathes — all are substances foreign to her body. Yet [plaintiff] indulges these activities consistent with her Christian faith." *Chinnery*, 2024 WL 3152348, at *5. In *Chinnery*, the court found the plaintiff failed to plead a religious belief contrary to her employer's vaccine requirements where "[t]he Amended Complaint does not contain so much as a scintilla of explanation to differentiate between

14

the COVID vaccine and a mid-afternoon snack. Both are substances foreign to the body. Yet [plaintiff] objects to the former while embracing the latter." *Id.*

Defendants insist that Plaintiff's rejection of the COVID-19 vaccine against the backdrop of her past acceptance of the influenza vaccine places her in both of the above-described impermissible categories. Specifically, Defendants aver that Plaintiff provides "no legitimate explanation as to why she could ignore the voice or guidance of the Holy Spirit" by receiving the influenza vaccination but cannot do the same for the COVID-19 vaccination. (ECF No. 29-1 at p. 22.) According to Defendants, "[t]he only logical answer . . . is that Plaintiff was cashing in on her limitless excuse to avoid a particular obligation she did not want to comply with for personal reasons." *Id.* Additionally, Defendants add, "Plaintiff does nothing to connect [her] purported beliefs to how submitting to the COVID-19 Policy would conflict with such beliefs." *Id.* at p. 24. Neither argument persuades the court.

Unlike plaintiffs seeking "blanket privileges," here, Plaintiff does not claim she must seek God's permission before accepting any foreign substance; nor does her request amount to a mere statement that she has complete autonomy over her body. *See Foshee*, 2023 WL 6845425, at *4 (rejecting, as "blanket privilege," plaintiff's "position[] that God gave him a conscience and tells him what to do[.]"); *Ellison*, 692 F. Supp. 3d at 559 (rejecting plaintiff's claim that she must "refuse any particular form of medical treatment . . . unless and until she has sought and received God's permission to accept it, through prayer."). In her exemption request, Plaintiff sets forth her interpretation of various scripture passages: she is called to avoid fornication, drunkenness, "certain food and drinks," and vaccines. (ECF No. 29-2 at p. 10.) Nothing in her exemption request suggests her professed belief could be invoked to evade any employment requirement. And while the court is not deaf to Defendants' urgence that Plaintiff's inconsistent vaccine past

may be an insurmountable barrier to the success of her claims, as explained above, this is properly left to the fact-finder and is not a good fit for summary judgment.

In her exemption request and subsequent testimony, Plaintiff repeatedly specifies that, as part of her religious belief system, she rejects vaccines, because they defile the body in violation of the Holy Bible.  (ECF No. 29-2 at p. 9; ECF No. 29-3, Anoru Dep Tr. 53:4–54:7.)  Unlike other body-as-a-temple claimants, Plaintiff does not broadly reject any substance she may label as impure or foreign.  As this court recently determined, testimony that a plaintiff believes her body is a "temple of the Holy Spirit," and does not want to "defile" it by receiving a vaccine is sufficient evidence that the plaintiff's professed belief is sincerely held and religious in nature.  *Davis v. Reliance Test & Tech., LLC*, No. CV DKC 22-1760, 2025 WL 266664, at *6 (D. Md. Jan. 22, 2025).  Accordingly, Defendants do not persuade the court that the record lacks evidence to support Plaintiff's claim that her opposition to vaccines is religious in nature.

### 3. *Defendants' Accommodation*

Defendants finally assert that Plaintiff's failure-to-accommodate claim fails because Plaintiff's requested exemption from MedStar's mandatory testing requirement included a request that she not be tested twice weekly (assuming her exemption were granted),[3] effectively rejected out of hand the alternative safety measures identified in the vaccine policy to be put in place in the event of religious exemption.  (ECF No. 29-1 at pp. 22, 26; ECF No. 29-2 at p. 11.)  And, Defendants correctly observe, a plaintiff seeking accommodation is not entitled to the accommodation of her choice.

Title VII "requires that an employer, short of undue hardship, make reasonable accommodations to the religious needs of its employees."  *EEOC v. Ithaca Indus., Inc.*, 849 F.2d

---

[3] In the addendum, Plaintiff writes: "I am requesting that I not be tested for COVID twice per week, but be screened instead.  However, if I develop symptoms, and then be tested."  (ECF No. 29-2 at p. 11.)

116, 118 (4th Cir. 1988), *cert. denied*, 488 U.S. 924 (1988).  The statute puts the onus to offer a reasonable accommodation on the employer, and "the Fourth Circuit has cautioned against 'improperly plac[ing] the burden on the employee to be reasonable rather than on the employer to attempt accommodation.'"  *U.S. Equal Emp. Opportunity Comm'n v. Greyhound Lines, Inc.*, 554 F. Supp. 3d 739, 759 (D. Md. 2021) (quoting *Ithaca Indus.*, 849 F.2d at 118.))  "To satisfy its burden, the employer must demonstrate *either* (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances *or* (2) that such accommodation was not provided because it would have caused an undue hardship—that is, it would have 'result[ed] in more than a *de minimis* cost to the employer.'"  *Firestone Fibers & Textiles Co.*, 515 F.3d at 312 (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986)) (emphasis original).

Defendants' argument is unavailing.  It is undisputed that Defendants denied Plaintiff's accommodation request having never engaged in an interactive accommodation process; and while Plaintiff's addendum requests avoidance of twice weekly testing, Defendants failed to discuss with her any accommodation, including any combination of safety measures in lieu of the vaccine.  And Defendants did not assert then, and do not assert now, that they rejected Plaintiff's accommodation based on undue hardship.  Instead, as reflected above, Defendants rejected Plaintiff's exemption because MedStar determined her religious belief was not "sincerely held given your acceptance of other vaccines."  (ECF No. 29-2 at p. 12; ECF No. 29-4, Gorecki Dep. Tr. 23:11–24:1.)  Further, Defendants' argument regarding what would have happened if MedStar offered Plaintiff an accommodation is speculative and a contested question of fact.  *See Greyhound*, 554 F. Supp. 3d at 757 (noting "[t]he reasonableness analysis in [religious accommodation] contexts … is fact specific. … 'Ordinarily, questions of reasonableness are best left to the fact finder.'" (quoting *E.E.O.C. v. Universal Mfg. Corp.*, 914 F.2d 71, 73 (5th Cir. 1990)).

Further, the court observes that the policy refers to "interval testing" – and later specifies that "[f]requency will begin at one time per week and will be adjusted as needed based upon community prevalence." (ECF No. 29-2 at pp. 3-4.) Therefore, the court is unpersuaded that Plaintiff's alternative request to avoid twice weekly testing was contrary to Defendants' described safety measures to be implemented in the event of religious exemption; or that it necessarily posed an undue burden.

Defendants' Motion will be denied as to Plaintiff's Count I.

## B. Count II: Unlawful Termination Due to Religious Discrimination under MFEPA

In Count II, Plaintiff alleges that "Defendants denied Plaintiff's request for a religious exemption due to her sincerely held religious beliefs and thereby discriminated against Plaintiff in violation of [M]FEPA" and "Plaintiff was subjected to an adverse employment action—termination—for her inability to comply with a conflicting employment requirement." (ECF No. 1 ¶¶ 68, 70.) Plaintiff brings her unlawful termination claim under MFEPA, not Title VII. *Id.* at p. 13. MFEPA is the state law analogue to federal employment discrimination statutes. *Ensor v. Jenkins*, No.CV ELH-20-1266, 2021 WL 1139760, at *18 (D. Md. Mar. 25, 2021). "Courts judge discrimination and retaliation claims brought under MFEPA by the same standards as those same claims brought under Title VII." *Lowman v. Maryland Aviation Admin.*, No.CV JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019) (citing *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496–97 (D. Md. 2013)).

As relayed above, Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's religion." 42 U.S.C. § 2000e-2. The definition of "religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an

employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

"To prove a Title VII claim under a disparate treatment theory, a plaintiff 'must demonstrate that the employer treated her differently than other employees because of her religious *beliefs*.'" *Barnett*, 125 F. 4th at 471 (emphasis original) (quoting *Chalmers*, 101 F.3d at 1012). "Accordingly, a plaintiff-employee, alleging disparate treatment with respect to her discharge, satisfies her burden at the summary judgment stage if she establishes that her job performance was satisfactory and provides 'direct or indirect evidence whose cumulative probative force supports a reasonable inference that [the] discharge was discriminatory.'" *Chalmers*, 101 F.3d at 1017 (quoting *Lawrence v. Mars, Inc.*, 955 F.2d 902, 905–06 (4th Cir.), *cert. denied*, 506 U.S. 823 (1992)).

Here, Plaintiff neither alleges nor adduces evidence to support a finding that Defendants harbored a desire or intent to treat her differently due to her religion and that this intent bore on her termination decision. *See Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–02 (2003) (explaining direct evidence of discrimination is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."). Plaintiff concedes that MedStar terminated her employment for failure to comply with the mandatory vaccine policy (ECF No. 29-3, Anoruo Dep. Tr. 95:3–96:22), and she presents no direct evidence on which a reasonable factfinder could rely to conclude that discriminatory animus motivated her Defendants to terminate her employment.

Absent direct evidence, Plaintiff's remaining option to establish a *prima facie* case of religious discrimination is under a burden-shifting scheme similar to that articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> This might consist of evidence that the employer treated the employee more harshly than other employees of a different religion, or no religion, who had engaged in similar conduct. If the employee presents such evidence, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions towards the employee. The employee is then required to show that the employer's proffered reason is pretextual, and that the employer's conduct towards her was actually motivated by illegal considerations. At all times, the ultimate burden of persuasion lies with the employee.

*Chalmers*, 101 F.3d at 1017–18 (citations omitted).

Plaintiff does not dispute that MedStar's vaccine policy applied equally to all employees. (ECF No. 29-2 at pp. 2–4; ECF No. 29-3, Anoruo Dep. Tr. 95:3–96:9.)  And Plaintiff offers no evidence that another person subject to the policy engaged in similar conduct—namely, refused to be vaccinated in violation of the policy—and was not fired or was otherwise treated less harshly or more favorably. *See Barnett*, 125 F.4th at 472 (finding plaintiff had "sufficiently alleged facts supporting a reasonable inference of discriminatory intent" when plaintiff alleged defendant employer "decided to pick winners and losers from among the employees making exemption requests, based upon whether the [Exemption Committee] found an employee's religious beliefs were legitimate" and "chose to exempt employees who came from more prominent religions or held to more conventional beliefs related to religious exemption to vaccines, but denied exemptions to employees [] who held less well-known or respected religious beliefs").

The court notes, finally, that Plaintiff offers no response to Defendants' argument that she fails to establish a disparate-treatment religious discrimination claim; instead, Plaintiff's opposition to the Motion focuses on her religious accommodation claim.  She therefore concedes

Defendants' argument on this point.  Accordingly, the court finds no triable issue of fact exists in regards to Plaintiff's second cause of action, and will grant summary judgment on same in Defendants' favor.

**IV.**    **<u>CONCLUSION</u>**

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 29) will be granted in part and denied in part.

/S/

June 9, 2025

_____
Julie R. Rubin
United States District Judge